### In re SUPERTRAIL MANUFACTURING CO., INC.

**Supertrail Manufacturing Co., Inc., Plaintiff,**

**v.**

**Pacific Investments, Inc. and Heights, Inc., Defendants.**

**Bankruptcy No. 96–20040.
Adversary No. 97–2059.**

United States Bankruptcy Court, N.D. Mississippi.

Dec. 29, 2000.

Craig M. Geno, Jackson, MS, for debtor.

Les Alvis, Tupelo, MS, Henry J. Applewhite, Aberdeen, MS, Thomas M. Brahan, Aberdeen, MS, Eric C. Christu, West Palm Beach, FL, Kenneth H. Coghlan, Oxford, MS, Stephen M. Corban, Tupelo, MS, Ralph M. Dean, Oxford, MS, Robert H. Faulks, Aberdeen, MS, Nannette Gammon, West Palm Beach, FL, Brian T. Hanlon, West Palm Beach, FL, Jean Magee Hogan, Phelps, Dunbar, Marks, Claverie & Sims, Tupelo, MS, Michael D. Jonas, Aberdeen, MS, Alan S. Kerxton, Rockville, MD, Marc J. Korab, Washington, DC, Kristol Management and Investment, Salt Lake City, UT, William H. Leech, Jackson, MS, Patrick F. McAllister, Jackson, MS, Patrick D. McMurtray, New Orleans, LA, Jeffery M. Navarro, Aberdeen, MS, James W. Newman, IV, Jackson, MS, Robert G. Panse, West Palm Beach, FL, Rodolfo Pittaluga, Jr., Miami, FL, Glover Roberts, Dallas, TX, Stephen Rosenblatt, Jackson, MS, P. Nelson Smith, Jr., Gholson, Hicks & Nichols, Columbus, MS, Victoria · A. Springfellow, Jackson, MS, Paul B. Steinberg, Steinberg, Slewett & Yaffee, P.A., Miami Beach, FL, Cynthia Stier, Washington, DC, Lawrence U. Taube, West Palm Beach, FL, Richard P. Zaretsky, West Palm Beach, FL, for creditors.

DAVID W. HOUSTON, III, Bankruptcy Judge.

## OPINION

On consideration before the court is a complaint filed by the plaintiff, Supertrail Manufacturing Co., Inc., (Supertrail); answer and affirmative defenses having been filed by the defendant, Heights, Inc., (Heights); on proof in open court; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E), and (H).

### II.

In the pretrial order, Supertrail presented its concise summary of the ultimate facts as follows:

> Title to real property, owned by the plaintiffs predecessor in interest was fraudulently transferred to the defendant. Prior to the defendant's disbursement of all of the purchase price (for the real estate) and prior to the defendant's disbursement of other funds regarding the real estate, the plaintiff notified the defendant of its claims. Despite the notice, the defendant continued to expend significant sums of money for the purchase price of the real estate. Additionally, a mortgage held by the plaintiff was released in connection with the sale of the real estate for no consideration.

Heights presented its concise summary of the ultimate facts as follows:

> Heights is the record title holder and owner of the five (5) lots in Palm Beach County, Florida. Such property is more particularly described as follows:

> Lots 178, 190, 251, 252 and 253, all in Plat No. 1, STONEWAL ESTATES, P.U.D., according to the Plat thereof recorded in Plat Book 47, Page 12, Public Records of Palm Beach County, Florida.

Estates Holdings, Inc. (the former name of Iris, which Supertrail alleges to be a predecessor in interest) actually conveyed the five lots by Warranty Deed to Yvonne E. Campbell on March 1, 1992. Yvonne E. Campbell conveyed the lots to Pacific Investment Company on October 25, 1994. Pacific Investment Company conveyed the lots to Heights on February 16, 1995.

Norske obtained its mortgage on the five lots on August 9, 1988. A.J., Inc., a Maryland corporation, became the assignee from Norske of the aforesaid mortgage on June 9, 1993. On October 25, 1994, A.J., Inc., executed the partial releases of its mortgage on those five lots.

On December 2, 1994, Iris, Norske, Yvonne E. Campbell and A.J., Inc., entered into a mortgage modification agreement and a confirmation and subordination agreement whereby it was expressly agreed that the terms and provisions of the Norske mortgage and note, the assignment of same to A.J. Inc., the deed from Iris to Yvonne E. Campbell, the deed from Yvonne E. Campbell to Pacific Investment Company, and the release by A.J., Inc., of the Norske mortgage on the five lots was ratified, confirmed, and agreed to be in full force and effect by Iris and Norske; the agreements were entered into in consideration of those parties entering into the Iris Settlement Agreement. The Iris Settlement Agreement was the subject of Supertrail's motion for approval submitted to this Court on May 17, 1996. The motion to approve the Iris Settle-

ment Agreement was granted by this Court on July 8, 1996.

Dr. Mustafa Atac is represented by Supertrail's Florida counsel, and previously filed a civil action against Pacific Investment Company and Heights, seeking to establish his alleged ownership of the five lots in Case No. CL95–166DAE in the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County, Florida. The Supertrail adversary complaint alleges that conveyances to Pacific Investments, Inc., and Heights were in breach of an agreement in favor of Atac. In fact, no such agreement has been produced in discovery. On May 7, 1997, Atac filed a voluntary dismissal of claims against Heights, and filed a notice of release of lis pendens against the five lots.

Supertrail has not alleged that the conveyance of the lots to Yvonne Campbell or the assignment of the mortgage to A.J., Inc., were fraudulent conveyances. Supertrail had no legal interest in the lots when they were conveyed to Pacific Investment Company or subsequently to Heights. Supertrail has no standing to complain about the alleged breach of any agreement in favor of Atac, who has previously dismissed his alleged claim against Heights.

Heights is the owner of the lots. In the alternative, pursuant to 11 U.S.C. § 550(e), Heights is a good faith transferee entitled to a lien on the five lots in order to secure the cost to Heights of improvements made and any increases in the value of the lots, and for payments for purchase of the lots and payments of taxes, dues, license fees, and litigation fees and expenses. Heights was a remote transferee that paid good value and in good faith for the five lots, having made payments to Pacific Investment Company for purchase of the lots, to the Palm Beach County for taxes and license fees, for dues to Estates Property Owners, and for litigation fees, and expenses in defense of the lawsuit filed by Dr. Atac regarding disputed claims of ownership to the five lots.

In the pretrial order, the parties stipulated to the following facts:

a. Supertrail was a corporation organized and existing under and by virtue of the laws of the State of Mississippi. Supertrail is the debtor-in-possession in case number 96–20040 that is presently pending before this Honorable Court.

b. Heights is a corporation organized and existing under and by virtue of the laws of the State of Idaho.

c. This Court has jurisdiction of Heights' adversary proceeding pursuant to the provisions of 28 U.S.C. § 157 and 1334, and 11 U.S.C. § 548 and 550.

d. The debtor Supertrail commenced this bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on or about January 4, 1996. No plan of reorganization has been confirmed.

e. Supertrail filed an adversary complaint against Pacific Investments, Inc., (hereinafter "Pacific") and Heights on or about March 25, 1997.

f. The adversary complaint alleges a connection or relationship between Supertrail and Dr. Mustafa Atac, and that conveyances of lots to Pacific and subsequently to Heights, were in breach of an agreement in favor of Dr. Mustafa Atac. No such agreement has been produced.

g. Heights is the record title holder and owner of the five (5) lots in Palm Beach County, Florida. Such property is more particularly described as follows:

Lots 178, 190, 251, 252 and 253, all in Plat No. 1, STONEWAL ESTATES,

P.U.D., according to the Plat thereof recorded in Plat Book 47, Page 12, Public Records of Palm Beach County, Florida.

h. Estates Holdings, Inc. (the former name of Iris, which Supertrail alleges to be a predecessor in interest) actually conveyed the five lots by Warranty Deed to Yvonne E. Campbell on March 1, 1992. Yvonne E. Campbell conveyed the lots to Pacific Investment Company on October 25, 1994. Pacific Investment Company conveyed the lots to Heights on February 16, 1995.

i. Norske obtained its mortgage on the five lots on August 9, 1988. A.J., Inc., a Maryland corporation, became the assignee from Norske of the aforesaid mortgage on June 9, 1993. On October 25, 1994, A.J., Inc., executed the partial releases of its mortgage on those five lots.

j. On December 2, 1994, Iris, Norske, Yvonne E. Campbell and A.J., Inc., entered into a mortgage modification agreement and a confirmation and subordination agreement whereby it was expressly agreed that the terms and provisions of the Norske mortgage and note, the assignment of same to A.J., Inc., the deed from Iris to Yvonne E. Campbell, the deed from Yvonne E. Campbell to Pacific, and the release by A.J., Inc., of the Norske mortgage on the five lots was ratified, confirmed, and agreed to be in full force and effect by Iris and Norske; these agreements were entered into in consideration of those parties entering into the Iris Settlement Agreement. The Iris Settlement Agreement was the subject of Supertrail's motion for approval submitted to this Court on May 17, 1996. The motion to approve the Iris Settlement Agreement was granted by this Court on July 8, 1996.

k. Dr. Mustafa Atac is represented by Supertrail's Florida counsel, and previously filed a civil action against Pacific Invest-

ment Company and Heights, seeking to establish his alleged ownership of the five lots in Case No. CL95–166DAE in the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County, Florida. On May 7, 1997, Atac filed a voluntary dismissal of the claims against Heights, and filed a notice of release of lis pendens against the five lots.

l. Heights has made payments of $133,175.22 to Pacific Investment Company, $67,212.83 to Palm Beach County for taxes and license fees, $19,543.05 to Estates Property Owners for dues, and $15,883.69 for litigation fees and expenses in defense of the Atac lawsuit.

### III.

From the proof presented, the court concludes that the following events occurred:

*Norske, U.S.A., Inc., (Norske) Mortgage:*

Estates Holdings, Inc., (Estates Holdings) a corporate entity related to Supertrail's predecessors in interest, executed a mortgage in favor of Norske on August 9, 1988, encumbering the five lots which are subject to the current dispute. (Exhibit D–5)

This mortgage was initially assigned to Enterprise National Bank of Palm Beach for the benefit of L. Campbell IRA on April 30, 1991. (Exhibit D–6) It was then assigned to Robert Cook, an attorney representing Larry Campbell, on March 19, 1992. (Exhibit D–7) It was thereafter assigned by Cook to A.J., Inc., a Campbell corporate entity, on June 7, 1993. (Exhibit D–8)

As a part of a settlement negotiated by Supertrail's predecessors in interest and the Campbell entities, A.J., Inc., released the five subject lots from the Norske mortgage on October 25, 1994. Five separate

releases were prepared and recorded on February 24, 1995. (Exhibit D–9)

### Pertinent Transfers of Title to the Five Subject Lots

Estates Holdings executed a warranty deed to Yvonne Campbell, dated March 1, 1992. (Exhibit D–1) This coincides roughly with the assignment of the Norske mortgage to Robert Cook as noted hereinabove. This warranty deed was initially held in escrow by Cook and not recorded until March 28, 1994.

The court is of the opinion that the execution of the warranty deed, coupled with the assignment of the Norske mortgage, served to collateralize a $250,000.00 letter of credit, arranged by Larry Campbell for the benefit of Estates Holdings and/or its related entities, which, in turn, served as security for an obligation owed to Palm Beach County by one or more of the said entities concerning Phase IA of the Stonewal Estates development. The recording of the warranty deed, slightly more than two years after it was executed, was apparently prompted by Palm Beach County's giving notice that it would make demand on the letter of credit. This is discussed further hereinbelow.

As a part of an Escrow Agreement, dated October 25, 1994 (Exhibit D–10), Yvonne Campbell executed a warranty deed on October 25, 1994, conveying the five lots to Pacific Investment Company. (Exhibit D–3) This deed was recorded at Book 8503, page 426, on November 14, 1994. According to the testimony, the Escrow Agreement was not fully adhered to or performed by the contracting parties. Regardless, in the opinion of the court, it was supplanted by the Iris Settlement Agreement, dated December 2, 1994, which is addressed below. (Exhibit D–15)

Iris Country Club, Inc., the successor corporate entity to Estates Holdings, executed a quitclaim deed conveying the five lots to Yvonne Campbell on October 26, 1994. (Exhibit D–2) This deed was recorded in Book 8503, page 423, on November 14, 1994. This instrument was executed to insure that title was being appropriately vested in Pacific Investment Company through Campbell.

On December 28, 1995, Iris Country Club, Inc., and several other related entities merged into Norske. Immediately thereafter, Norske merged into Supertrail. (Exhibit P–81)

### Iris Settlement Agreement

When Palm Beach County indicated that it would make demand on the letter of credit arranged by Campbell, Dr. Mustafa Atac agreed to infuse $260,000.00, to satisfy the Palm Beach County demand and, correspondingly, the letter of credit. As consideration for this infusion, the subject five lots in Phase I of Stonewal Estates were transferred through Yvonne Campbell to Pacific Investment Company, the stock of which was to be owned by Dr. Atac. Pacific Investment Company was incorporated by Paul Swenke, an attorney who, at that time, represented Dr. Atac. In order for the transfer of the lots to have meaningful value, it was necessary for A.J., Inc., to release the lots from the Norske mortgage. These events were first mentioned in the Escrow Agreement and then later ratified in the Iris Settlement Agreement which was executed by Iris Country Club, Inc., and Norske, as well as, by Yvonne Campbell, A.J., Inc., and Lyec Three, Inc., another Campbell entity.

The Iris Settlement Agreement provided that fair consideration was exchanged, and that the transfers were not fraudulent conveyances as contemplated by the Bankruptcy Code. Although there were other issues in dispute between Supertrail's predecessors in interest and the Campbell

entities, particularly concerning Phase IA of Stonewal Estates, the Iris Settlement Agreement appeared to resolve all disputes relative to the subject five lots located in Phase I. The agreement was approved by this court on July 8, 1996, as a result of a motion filed by Supertrail. (Exhibit D–15A)

### IV.

At the time of the transfer of the five lots to Pacific Investment Company, Paul Swenke was thought to be a trusted friend of Dr. Atac and many of the other individuals who were affiliated with Supertrail's predecessors in interest. This was not the case. Swenke arranged for the transfer of the five lots to Heights, and apparently kept the proceeds of the transaction for himself without making an accounting to Dr. Atac or Pacific Investment Company. The stipulations indicated that Heights made the following payments relative to the lots:

| | |
|---|---|
| $133,175.22 | — paid to Pacific Investment Company |
| 67,212.83 | — paid to Palm Beach County for taxes |
| 19,543.05 | — paid as dues to the Property Owners Association |
| 15,883.69 | — attorneys' fees and costs |

$235,814.79

Heights takes the position that it is a bona fide purchaser of the five lots for value. While this may be true, it is not an issue that is before the court at this time. The significant question is whether Supertrail's predecessors in interest lost the five lots and/or the Norske mortgage as a result of fraudulent conveyances. In this context, the court must take the position that because of the various mergers, all of the predecessors in interest to Supertrail must be considered as one. Indeed, the plaintiff in this cause of action is Supertrail, not Norske of Iris Country Club.

When the decision was originally made to transfer the five lots to Yvonne Campbell and assign the Norske mortgage, the Supertrail predecessors in interest obviously intended to collateralize the letter of credit that Larry Campbell had arranged relative to the obligation owed to Palm Beach County. It would have been meaningless to simply transfer the lots without assigning the Norske mortgage. Otherwise, Campbell would only get collateral fully encumbered by debt. In its presentation to the court, Supertrail argued that it lost title to the lots and the ownership of the mortgage. However, because the mortgage encumbered the lots, there is clearly no "double" loss to Supertrail or its predecessors. Consequently, the true item of value given to Campbell was the mortgage assignment. The corresponding consideration was the letter of credit that had been placed as security to satisfy the obligation owed to Palm Beach County.

When Palm Beach County indicated that it would make demand on the letter of credit, Campbell called upon Supertrail's predecessors in interest for assistance. This, of course, ultimately prompted the $260,000.00 infusion by Dr. Atac, which was utilized to satisfy the Palm Beach County obligation. The "quid pro quo" for this infusion was the transfer of the five lots, free and clear from the Norske mortgage, to Pacific Investment Company, an entity that was to be owned by Dr. Atac. The five lots, owned by Iris Country Club, one of Supertrail's predecessors in interest, were released from the mortgage held by Norske, another of Supertrail's predecessors in interest, so that the Palm Beach County debt, which was owed by one or more of Supertrail's predecessors in interest, could be paid. From the evidence presented, the actual value transferred is reasonably equivalent to the amount of the debt that was satisfied. If there is another explanation for this series of events, it was not developed in the proof.

In its argument to the court, Supertrail took the position that Iris Country Club

and Norske actually received no benefit as a result of the aforementioned transactions because the Palm Beach County obligation was related to property located in Phase IA of the Stonewal Estates development rather than Phase I, where the five lots, owned by Iris Country Club, were located. Because of the various mergers, bringing not only Iris Country Club and Norske into Supertrail, but the other entities as well, this argument is misplaced. Once the mergers were consummated, the assets were owned and the debts were owed by one surviving entity. Supertrail and its predecessors created this corporate web. They must now live with the consequences.

The injured party in this proceeding is Dr. Atac who paid $260,000.00, in order to satisfy the Palm Beach County obligation. (Parenthetically, the court recognizes that the infusion provided by Dr. Atac did not come exclusively from his personal funds. Rather, he was acting for himself, as well as, as a "de facto" trustee for several others. For purposes of this opinion, however, it is much simpler to discuss his involvement in the singular.) Dr. Atac did not receive the shares of stock in Pacific Investment Company, which was to have owned the five subject lots. The testimony of Noreen Wilson to the effect that the lots were to be re-encumbered with a new mortgage in favor of Norske is illogical. It would make absolutely no sense for Dr. Atac to pay $260,000.00, only to receive lots that were encumbered by a mortgage in favor of another entity. Had Swenke not orchestrated the sale of the lots to Heights and then absconded with the proceeds, this cause of action would never have been filed. Swenke, the truly culpable party, was not named as a defendant in this proceeding.

## V.

The court is of the opinion that neither § 726.106 or § 727.105(la), Fla.Stat. (1997),

are applicable to this proceeding. A debt was paid through the release of assets, the values of which are comparable. The court has seen no evidence whatsoever to indicate that the obligation owed to Palm Beach County was not a debt owed by one of Supertrail's predecessors in interest. As such, the court is of the opinion that the complaint filed by Supertrail should be dismissed with prejudice. All court costs accrued herein shall be paid by Supertrail.

An order, consistent with this opinion, shall be entered contemporaneously herewith.